UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JABARI LEON DOTSON,

      *Plaintiff*,

  v.

DISTRICT OF COLUMBIA, *et al.*,

      *Defendants*.

Civil Action No. 24-1864 (LLA)

**MEMORANDUM OPINION AND ORDER**

     Plaintiff Jabari Leon Dotson brings this action against Defendants, the District of Columbia and Metropolitan Police Department ("MPD") Chief Pamela A. Smith. ECF No. 1. Mr. Dotson alleges that Defendants infringed on his Second Amendment rights by denying his firearm registration application due to a prior weapons offense conviction. *Id.* ¶¶ 29-56. He seeks declaratory, injunctive, and compensatory relief. *Id.* at 14. Shortly after filing his complaint, Mr. Dotson moved for a preliminary injunction to enjoin D.C. Code § 7-2502.03(a)(2), the provision that prohibits individuals convicted of weapons offenses from registering for a firearm. ECF No. 5. For the reasons explained below, the court will deny the motion.

     **I.**    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

     In August 2015, Mr. Dotson was a passenger in a vehicle stopped for a speeding violation in Maryland. ECF No. 1 ¶ 19. Police searched the car and discovered a handgun under the driver's seat and marijuana in Mr. Dotson's possession. *Id.* ¶ 19. Following a bench trial in November 2016, Mr. Dotson was convicted in the U.S. District Court for the District of Maryland of unlawful

possession of a controlled substance, 36 C.F.R. § 2.35(b)(2), and possession of a loaded weapon in a vehicle, 36 C.F.R. § 2.4(b).  ECF No. 1 ¶ 19.

In December 2023, Mr. Dotson applied for a firearm registration certificate and a concealed-carry license in the District of Columbia.  ECF Nos. 11-2, 11-3.  On both application forms, in response to a question asking if he had ever been convicted of a "weapons offense," he answered "No."  ECF No. 11-2, at 2; ECF No. 11-3, at 2.  In January 2024, MPD denied both applications, explaining that Mr. Dotson's 2016 conviction for possession of a loaded weapon in a vehicle disqualified him from registering a firearm.  ECF No. 5-4, at 3-5.  The denials did not provide any additional bases for rejecting the applications.  *See id.*  Mr. Dotson appealed, but MPD's Acting Director of the Records Division affirmed the denials in mid-January.  *Id.* at 1-2.  Mr. Dotson subsequently appealed both denials to the Office of Administrative Hearings ("OAH"), where they are currently stayed.  *See* ECF No. 11-10, at 2.

In June 2024, Mr. Dotson filed suit in this court.  ECF No. 1.  He brought a facial and as-applied challenge to D.C. Code § 7-2502.03(a)(2), arguing that the statute is unconstitutional in light of *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *New York Pistol & Rifle Association v. Bruen*, 597 U.S. 1 (2022).  ECF No. 1 ¶¶ 3, 5.  He sought declaratory, injunctive, and compensatory relief.  *Id.* at 14.  Less than a week later, he moved for a preliminary injunction to prohibit the District from enforcing Section 7-2502.03(a)(2) against him.  ECF No. 5.

In September 2024, the District opposed the motion for a preliminary injunction, arguing that (1) Mr. Dotson lacked standing; (2) he was unlikely to prevail on the merits; (3) he would not suffer imminent, irreparable harm; and (4) the balance of equities and public interest weighed against granting the motion.  ECF No. 11.

On the same day that the District filed its opposition, MPD sent Mr. Dotson two emails (one for each application) providing an additional reason for the denials. ECF Nos. 11-10, 11-11. According to the emails, Mr. Dotson's appeal had "prompted further review of [his] application" and revealed that he had "mispresented [his] criminal history" by answering "No" to the weapons offense questions. ECF No. 11-10, at 2; ECF No. 11-11, at 2. MPD further explained: "[M]isrepresentations on an application are an independent ground for a denial. Accordingly, the Firearms Registration Branch is notifying you that your application for a concealed pistol license is independently denied on the ground that it contained material misrepresentations." ECF No. 11-11, at 2 (citing 24 DCMR § 2337.6 and D.C. Code §§ 7-2502.05(a), 7-2502.07(a)). Mr. Dotson also appealed this second set of denials to OAH, which remains pending. *See* ECF No. 18-1.

In October 2024, Mr. Dotson submitted a new firearm registration application in which he truthfully reported the existence of his 2016 weapons offense conviction. ECF No. 15-3 ¶ 3. MPD has yet to act on this new application. *Id.*

In November 2024, Mr. Dotson replied to the District's opposition and simultaneously moved to admit supplemental evidence addressing (1) standing, (2) his character, and (3) his diligence in seeking legal remedies. ECF Nos. 15, 16. The District opposed his motion, arguing that the proffered evidence was either irrelevant or could have been produced earlier in the litigation. ECF No. 17. Mr. Dotson replied. ECF No. 18. Both motions are now ripe for disposition.

## II.   MOTION TO SUPPLEMENT

### A.   Legal Standard

Whether to grant a motion to supplement the record is within the district court's discretion. *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008).

B.  Discussion

After filing a reply in support of his preliminary injunction motion, Mr. Dotson now seeks to introduce additional evidence and argument addressing standing, his character, and his diligence in seeking judicial relief.  The court will grant the motion in part and deny the motion in part.

*1.  Additional evidence related to standing*

Mr. Dotson first moves to introduce (1) an administrative law judge's order staying the first set of OAH appeals until after this court's resolution of the preliminary injunction motion, ECF No. 15-1; (2) an email from the District informing Mr. Dotson that MPD had issued the second set of denials, ECF No. 15-2; and (3) a declaration from Mr. Dotson explaining that he had submitted a new, truthful firearm registration application to MPD, ECF No. 15-3.

The first piece of evidence is neither relevant nor necessary to the court's ruling on justiciability.  The record already reflects that Mr. Dotson has appealed his registration denials to OAH.  ECF No. 11-10, at 2.  As long as those proceedings remain ongoing, their precise status—stayed, continued, or otherwise—does not affect the court's determinations on standing or mootness.

The second piece of evidence is also unnecessary.  The record already shows that MPD issued an additional reason for denying the applications on September 9, 2024—the same day the District opposed Mr. Dotson's preliminary injunction motion.  ECF Nos. 11-10, 11-11.

The court will, however, permit the third piece of evidence to come in to the extent that it discusses Mr. Dotson's new firearm registration application.  In the declaration, Mr. Dotson states that he submitted a new, truthful application on October 17, 2024—well after he filed his complaint and moved for a preliminary injunction.  ECF No. 15-3 ¶ 3.  While this information does not affect the court's standing analysis, it does play a role in the mootness inquiry.  As explained further *infra*, subsection III.C.2, the new application removes a potential barrier to Mr. Dotson's firearm

possession. Additionally, from an equity standpoint, Mr. Dotson had no opportunity to introduce this evidence earlier because MPD did not issue the second denials until the District filed its opposition. *See* ECF No. 17, at 3 ("[T]he District recognizes that Dotson could not have provided evidence relating to the District's specific standing argument with his [initial] motion.").

### 2.   *Additional evidence related to Mr. Dotson's character*

Next, Mr. Dotson wishes to introduce court documents relating to his prior arrests, ECF Nos. 15-4, 15-5, in order to "avoid a misleading record" about the nature of those incidents, ECF No. 16, at 3.  Both parties, however, acknowledge that Mr. Dotson's personal characteristics are irrelevant to his Second Amendment claim. *See* ECF No. 17, at 7-8; ECF No. 18, at 5 (Mr. Dotson admitting that he only proffered the character evidence "because the District raised the issue in the first place" and noting that he "consider[s] [it] irrelevant").  The court will therefore deny the motion as to these documents.

### 3.   *Additional evidence related to Mr. Dotson's diligence in seeking judicial relief*

Finally, Mr. Dotson seeks to introduce evidence showing that he was motivated to acquire a firearm after being ambushed by two gunmen in September 2022. ECF Nos. 15-3, 15-6.  During the attack, Mr. Dotson's vehicle was shot at 28 times, and he sustained gunshot wounds to his back requiring emergency medical treatment. ECF No. 15-3 ¶ 4.  While this is relevant to the District's lack-of-diligence argument, Mr. Dotson does not have a good explanation for why he failed to introduce it sooner.  By moving for a preliminary injunction, Mr. Dotson necessarily implied that he needs urgent and dire relief.  If he wanted the court to consider his evidence of urgency, he should have included it with his complaint or motion.  But because this information goes directly to the court's analysis on irreparable harm and provides useful context for Mr. Dotson's motivations, the court will exercise its discretion and grant the motion as to this evidence.

5

### III.     JUSTICIABILITY

#### A.     Standing Versus Mootness

As a threshold matter, the court must determine whether this is a question of standing or mootness. The District asserts that it is the former, ECF No. 11, at 7 n.4, whereas Mr. Dotson claims that it is the latter, ECF No. 18, at 1. While both doctrines are related, they are distinguished by timing. Standing "is concerned with the presence of injury, causation, and redressability *at the time a complaint is filed*," whereas mootness "scrutinizes the presence of these elements *after filing— i.e.*, at the time of a court's decision." *Garcia v. U.S. Citizenship & Immgr. Servs.*, 168 F. Supp. 3d 50, 65 (D.D.C. 2016). Put differently, mootness asks if there are any "circumstances that destroy the justiciability of a suit previously suitable for determination." 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3533 (3d ed. 2024).

The D.C. Circuit's opinion in *North American Butterfly Association v. Wolf*, 977 F.3d 1244 (D.C. Cir. 2020), illustrates the distinction. There, then-President Trump had ordered the Department of Homeland Security ("DHS") to construct a border fence that would have destroyed much of a wildlife sanctuary near the U.S.-Mexico border. *Id.* at 1249-50. The North American Butterfly Association sued, claiming that DHS's preparations for construction were violating numerous environmental protection laws. *Id.* at 1250-51. After litigation began, Congress signed two appropriations bills that prohibited DHS from using any funds to construct fencing within the threatened wildlife sanctuary. *Id.* at 1251-52. DHS argued that the post-litigation appropriations bills destroyed the plaintiff's standing, but the D.C. Circuit disagreed, explaining:

> DHS'[s] standing argument is misplaced because the standing inquiry focuses on whether the plaintiff has demonstrated an injury at the outset of the litigation, so post-filing developments like the 2019 and 2020 Appropriations Acts do not undercut standing. . . . DHS'[s] objection is more aptly framed in terms of mootness, which focuses on whether events subsequent to the filing of the complaint have so transpired that the decision will neither presently affect the

6

> parties' rights nor have a more-than-speculative chance of affecting them in the future.

*Id.* at 1258 (citations, internal quotation marks, and quoted sources omitted).  As the D.C. Circuit explained, whether standing or mootness applies depends on when the potentially jurisdiction-destroying event occurs.  Accordingly, the court first examines standing—as it must—before addressing mootness.  *See Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012).

### B.  Standing

#### 1.  Legal standard

Article III standing requires (1) "a concrete and particularized injury"; (2) "that is fairly traceable to the challenged action of the defendant"; and (3) that is "likely to be redressed by a favorable decision."  *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017) (internal quotation marks omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The plaintiff bears the burden of establishing that he has standing.  *Jibril v. Mayorkas*, 101 F.4th 857, 870 (D.C. Cir. 2024).

In the preliminary injunction context, the plaintiff must "show a substantial likelihood of standing under the heightened standard for evaluating a motion for summary judgment."  *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017) (internal quotation marks omitted) (quoting *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 912 (D.C. Cir. 2015)).  Therefore, "the plaintiff cannot 'rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts' that, if 'taken to be true,' demonstrate a substantial likelihood of standing."  *Id.* (alteration in original) (quoting *Lujan*, 504 U.S. at 561).

*2.     Discussion*

Mr. Dotson's standing hinges on redressability. A harm cannot be redressed if granting the injunction would "have no real effect" on the injury. *Kaspersky Lab, Inc. v. Dep't of Homeland Sec.*, 909 F.3d 446, 465 (D.C. Cir. 2018) (quoting *Kaspersky Lab., Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 187, 219 (D.D.C. 2018)). In other words, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

The District argues that Mr. Dotson's misrepresentation on his registration application is an independent basis for denying the application. ECF No. 11, at 5-9. Therefore, even if the court were to grant his motion for a preliminary injunction, he would still be barred from registering a firearm. *See id.* at 6-7. Mr. Dotson counters that, at the time he filed his complaint, MPD's only explanation for the denial was his prior weapons offense conviction. ECF No. 15, at 1. As a result, he had standing to sue. *Id.* The court agrees with Mr. Dotson.

Standing is assessed based "on the facts *as they exist when the complaint is filed*." *Lujan*, 504 U.S. at 569 n.4 (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)). It is true that, when Mr. Dotson initially applied to register a firearm and for a concealed-carry license, he lied on both application forms. ECF Nos. 11-2, 11-3. Under the District's Municipal Regulations, all applicants must "sign an oath or affirmation attesting to the truth of [their submitted] information," D.C. Code § 7-2502.05(a), and "[a]ny knowing material omission or false statement made by . . . the applicant may be considered grounds for denial of a conceal[ed] carry license," 24 DCMR § 2337.6. But when MPD informed Mr. Dotson that his applications were denied, it did not rely on his misrepresentations. ECF No. 5-4, at 3-5. Instead, MPD based its decision to deny Mr. Dotson's applications solely on his prior weapons offense conviction and specifically cited D.C. Code § 7-2502.03(a)(2). *Id.* MPD did not use the omissions to justify Mr. Dotson's

denials until September 9, 2024 (the same day on which the District opposed the preliminary injunction motion). ECF No. 11-10, at 2; ECF No. 11-11, at 2. Putting that curious timing aside, this secondary justification came well after the complaint was filed and cannot affect the standing analysis. *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 324 (D.C. Cir. 2009) (holding that "standing is assessed as of the time a suit commences").

While Mr. Dotson's misrepresentation clearly existed when he sued, the determinative factor is that MPD did not act on it until much later.[1] The only actual barrier to relief when the suit began was Section 7-2502.03(a)(2), the precise provision Mr. Dotson now seeks to enjoin. An injunction would remove that obstacle, meaning that his injury was "redressable at the time [he] filed [his] complaint." *Am. Clinical Lab'y Ass'n v. Becerra*, 40 F.4th 616, 622 (D.C. Cir. 2022). Because the District's argument relies on MPD's post-complaint behavior, it sounds in mootness, which the court addresses next.

### C.     Mootness

#### 1.     Legal standard

Under the mootness doctrine, if post-complaint events have transpired such that the court's decision "will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," the court "must dismiss [the] case as moot." *Chamber of Com. of the U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)). Unlike standing, the *defendant* bears the burden of proving mootness. *Jibril*, 101 F.4th at 870.

---

[1] Counsel for the District acknowledged at oral argument that MPD "discovered [Mr. Dotson's misrepresentation] post-complaint." Prelim. Inj. Hr'g Tr. 6:15.

*2.     Discussion*

The District argues that MPD's second denials render the case moot because those denials prevent the court from issuing effective relief to Mr. Dotson. ECF No. 11, at 7 n.4. The court disagrees.

While Mr. Dotson's misrepresentations on the original applications are an independent reason for denying them, he has circumvented that problem by submitting a new, truthful firearm registration application. *See* ECF No. 15-3 ¶ 3. As far as Mr. Dotson is aware, MPD has not acted on the new application. *See id.* OAH may affirm the denials of Mr. Dotson's original applications based on either Section 7-2502.03(a)(2) or his material omissions. But his new application corrects the latter deficiency, meaning that he is once again on a collision course with the challenged statute. As of this moment, Section 7-2502.03(a)(2) bars Mr. Dotson from registering a firearm. And by refiling a truthful application, he has removed the only other barrier to registration. If the court were to enjoin the challenged statute, Mr. Dotson would be eligible to register a firearm. Accordingly, the case is not moot.

The District claims that MPD may still deny the *new* application due to Mr. Dotson's omissions on the *original* applications. After all, it would make little sense to "allow[] an applicant to avoid consequences for his perjury by just refiling an application." ECF No. 17, at 6. While that may be true, even the District must admit that "whether MPD can deny a successive application for a prior misrepresentation is—at best—an open question."[2] *Id.* at 7. And because it is the District's burden to demonstrate mootness, this uncertainty cuts in Mr. Dotson's favor. The District cannot

---

[2] Both parties agree that this court lacks jurisdiction to consider the merits of the MPD denials and OAH appeals because they are purely a matter of District law. *See* ECF No. 11, at 7; ECF No. 15, at 2-3; ECF No. 17, at 5; *see also Lightfoot v. District of Columbia*, 448 F.3d 392, 399 (D.C. Cir. 2006) ("[T]he DCAPA's judicial review provision places exclusive jurisdiction in the D.C. Court of Appeals to review District agency action.").

10

confidently say that Mr. Dotson's original omission would independently block his new application. Because there is a more-than-speculative chance that Section 7-2502.03(a)(2) will apply to Mr. Dotson again, an injunction can still grant him the relief he seeks. Having determined that this case is justiciable, the court must address the merits of Mr. Dotson's request for a preliminary injunction.

### IV. PRELIMINARY INJUNCTION

#### A. Legal Standard

A preliminary injunction is an "extraordinary remedy." *Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 321 (D.C. Cir. 2018) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). The moving party must clearly demonstrate: (1) "likely success on the merits"; (2) "likely irreparable harm in the absence of preliminary relief"; (3) "a balance of the equities in its favor"; and (4) that the public interest favors an injunction. *Id.* (quoting *League of Women Voters v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016)). Whether to grant a preliminary injunction is committed to the sound discretion of the district court. *Trump v. Thompson*, 20 F.4th 10, 23 (D.C. Cir. 2021).

The D.C. Circuit has stressed that "the basis of injunctive relief in the federal courts has always been irreparable harm," meaning that "[a] movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). In this way, the Circuit "has set a high standard for irreparable injury." *Id.* First, the injury "must be both certain and great," "actual and not theoretical," and "of such *imminence* that there is a 'clear and present' need for equitable relief." *Id.* (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)

11

(per curiam)). Second, the injury "must be beyond remediation," meaning that "[t]he possibility [of] adequate compensatory or other corrective relief . . . at a later date . . . weighs heavily against a claim of irreparable harm." *Id.* at 297-98 (quoting *Wis. Gas Co.*, 758 F.2d at 674); *see* 11A Wright & Miller, *Federal Practice & Procedure* § 2948.1 (3d ed. 2024) ("Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief.").

### B.  Discussion

Consistent with the D.C. Circuit's directive, the court will focus on the irreparable-harm prong of the preliminary injunction analysis. For that reason, the court will "assume[], without deciding, that [Mr. Dotson] has demonstrated a likelihood" of success on the merits. *See England*, 454 F.3d at 303. As to irreparable harm, Mr. Dotson claims that because he alleges a constitutional injury, "the requirement of irreparable injury is satisfied." ECF No. 5-1, at 14-15 (internal quotation marks omitted). He is incorrect.

The D.C. Circuit recently made clear that alleged constitutional violations are not free passes to irreparable injury. In *Hanson v. District of Columbia*, 120 F.4th 223 (D.C. Cir. 2024)—involving a challenge to another District firearm law—the court explained:

> Even in the sensitive areas of freedom of speech and religion, where the risk of chilling protected conduct is especially high, we do not "axiomatically" find that a plaintiff will suffer irreparable harm simply because [he] alleges a violation of [his] rights. Rather, a plaintiff must show why the court will be unable to grant meaningful relief following trial. Thus, far from treating the Second Amendment as a "second-class right," we assess [the plaintiff]'s claim of irreparable harm using the same standard we apply to all fundamental rights.

*Id.* at 244 (citations omitted) (first quoting *England*, 454 F.3d at 302, then quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010)). *Hanson* demonstrates that Mr. Dotson is not entitled

12

to a presumption of irreparable harm simply because he alleges a Second Amendment violation.[3] He must still satisfy the burden of showing that his injury "is sufficiently certain, persuasively demonstrated, and so clearly irremediable that it warrants a court reaching out to alter the status quo before the merits are resolved." *Id.* (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) (McConnell, J., concurring)).

Without a presumption in his favor, Mr. Dotson's "claim of irreparable harm collapses" for two primary reasons. *See Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 204 (3d Cir. 2024), *petition for cert. filed sub nom.*, *Gray v. Jennings*, No. 24-309 (2024). First, he does not explain why his requested relief will be unavailable later. Preliminary injunctions are reserved for situations where the injury is so severe and immediate that the plaintiff cannot possibly afford to wait until the litigation has run its course. Their purpose is "not to prevent all harm but 'merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Hanson*, 120 F.4th at 244 (quoting *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024)). If Mr. Dotson prevails at the end of the litigation, he will be able to acquire a firearm registration and concealed-carry license at that time. Denying his injunction now will not prevent him from obtaining the requested relief later.

---

[3] Other circuits have reached the same conclusion. For instance, in *Delaware State Sportsmen's Association v. Delaware Department of Safety & Homeland Security*, 108 F.4th 194 (3d Cir. 2024), the Third Circuit explained that "[c]onstitutional harm is not necessarily synonymous with the irreparable harm necessary for issuance of a preliminary injunction." *Id.* at 203 (alteration in original) (quoting *Hohe v. Casey*, 868 F.2d 69, 73 (3d Cir. 1989)). *See also Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1017 (8th Cir. 2023) ("[T]he assertion of a possible constitutional violation does not release plaintiffs from their burden of showing that irreparable harm is more than just a 'mere possibility.'" (quoting *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2011))). *But see Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) ("If a plaintiff [alleging a constitutional violation] shows he is likely to prevail on the merits, that showing will almost always demonstrate he is suffering irreparable harm as well.").

At oral argument, Mr. Dotson countered that the continued denial of his Second Amendment rights would be devastating if "he [were to] befall another deadly assault." Prelim. Inj. Hr'g Tr. 25:1-3. In that scenario, any relief granted by this court would indeed come too late. But the general specter of being injured or becoming the victim of a crime is not sufficient to show irreparable harm. The Supreme Court has made clear that "simply showing some 'possibility of irreparable injury'" is not enough to carry the plaintiff's burden. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)). Such a standard "is too lenient" given the extreme nature of the requested injunctive relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The court declines enjoin a more than 50-year-old firearm law at this early stage, based only on a speculative fear of personal injury.[4]

Second, Mr. Dotson's delay in seeking relief cuts against his claims of irreparable injury. "[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 585 U.S. 155, 159 (2018). The complained-of injury must be so "*imminen*[*t*]" that "equitable relief is *urgently* necessary." *England*, 454 F.3d at 298 (second emphasis added). Mr. Dotson claims that he was motivated to acquire a firearm after surviving a near-fatal shooting in September 2022. ECF No. 15-3 ¶ 3. But Mr. Dotson waited fifteen months to even apply for firearm registration. ECF Nos. 11-2, 11-3. And after his application was initially denied in January 2024, he waited another five months before seeking a preliminary injunction. ECF No. 1. Mr. Dotson

---

[4] At oral argument, Mr. Dotson attempted to distinguish the alleged irreparable harm in *Hanson* from that of the instant case because *Hanson* only dealt with differences in magazine sizes. Prelim. Inj. Hr'g Tr. 24:7-14; *see Hanson*, 120 F.4th at 244-45 ("Hanson has not provided any specific explanation of the irreparable harm he faces from having the ability to fire 11, but not 18, rounds without pausing during the pendency of this litigation."). Here, in contrast, the alleged harm is the complete deprivation of the ability to own a firearm at all. The court recognizes that these alleged harms are different, but still concludes that Mr. Dotson's claim of irreparable injury—being the victim of an assault—is too "speculative and hypothetical" to warrant the extraordinary relief of a preliminary injunction. *Wis. Gas Co.*, 758 F.2d at 675.

14

attributes the second delay to the time spent retaining counsel. ECF No. 16, at 3-4. But even so, his failure to act for more than a year after the event that precipitated his need for a firearm "indicate[s] . . . a reduced need for . . . drastic, speedy action." *Del. State Sportsmen's Ass'n*, 108 F.4th at 206 (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)); *see Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995) ("[F]ailure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." (quoting *Citibank*, 756 F.2d at 277)). In short, Mr. Dotson cannot demonstrate that his alleged harm is so irremediable that it requires instant, emergency action by the court.

\*   \*   \*

A preliminary injunction is "an extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Wright & Miller, *Federal Practice & Procedure* § 2948 (2d ed. 1995)). For that reason, "courts must use great caution [and] grant[] them only in cases where they are clearly indispensable to the ends of justice." *Hanson*, 120 F.4th at 243 (quoting *Del. State Sportsmen's Ass'n*, 108 F.4th at 199). Mr. Dotson's circumstances do not "warrant the extraordinary remedy of a preliminary injunction that would alter a [fifty]-year status quo and effectively grant him the same relief he would obtain at the end of trial before that trial even starts." *Id.* (internal quotation marks omitted).

While the court concludes that Mr. Dotson has not carried his heavy burden today, it does not take the alleged infringement of his Second Amendment rights lightly. The court will therefore move to resolve the case on the merits expeditiously.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's Motion for a Preliminary Injunction, ECF No. 5, is **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion to Permit Supplementary Evidence and Argument, ECF No. 16, is **GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that the parties shall meet and confer and submit a proposed summary judgment briefing schedule to the court on or before December 23, 2024.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   December 9, 2024